UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVAK DRUCE CONNOLLY BOVE & QUIGG LLP,<br>    1875 I (Eye) Street, N.W.<br>    Eleventh Floor<br>    Washington, D.C.  20006<br><br>    Petitioner,<br><br>v.<br><br>SHAHROKH MIRESKANDARI, an individual, and PAUL BAXENDALE-WALKER, an individual,<br>    Shahrokh Mireskandari<br>    10776 Wilshire Blvd.<br>    Apt. 1903<br>    Los Angeles, CA 90024<br><br>    10445 Wilshire Blvd.<br>    No. 1501<br>    Los Angeles, CA 90024<br><br>    9903 Santa Monica Blvd.<br>    Suite, 406<br>    Beverly Hills, CA 90212<br><br>    433 N. Camden Dr., Sixth Fl.<br>    Beverly Hills, CA 90210<br><br>    Paul Baxendale-Walker<br>    Warwick House<br>    Fourth Floor<br>    25-27 Buckingham Palace Rd.<br>    London, England<br><br>    Respondents. | **Civil Action No. 14-801**<br><br>**PETITION FOR ORDER COMPELLING ARBITRATION PURSUANT TO 9 U.S.C. § 4 AND D.C. CODE § 16-4405(b) AND TO STAY STATE COURT PROCEEDINGS PURSUANT TO 9 U.S.C. § 3  AND D.C. CODE § 16-4407(e)** |

# PETITION

Petitioner Novak Druce Connolly Bove & Quigg LLP ("Novak") hereby alleges:

## NATURE OF THE CASE

1. By this Petition, Novak seeks to compel Respondents Shahrokh Mireskandari and Paul Baxendale-Walker (collectively, "Respondents"), its former clients, to comply with the mandatory arbitration provisions in Novak's client engagement agreements ("Engagement Agreements") to resolve Respondents' claims relating to Novak's representation of Respondents. True and correct copies of the Engagement Agreements are attached hereto as **Exhibit A** and **Exhibit B**.

2. Novak has been sued by Respondents in the Superior Court of the State of California, County of Los Angeles, entitled *Mireskandari et al. v. Marks & Sokolov, et al.*, Case No. BC 531449 ("California Action"). A true and correct copy of the complaint filed by Respondents in the Superior Court of the State of California is attached hereto as **Exhibit C**.

3. The subject matter of the California Action is the handling of litigation filed by Respondents in the United States District Court for the Central District of California, in which they were represented by Novak. The California Action asserts claims of legal malpractice and breaches of fiduciary duty against three law firms. In particular, Respondents assert a single cause of action against Novak for legal malpractice. (*See* Ex. C.)

4. Respondents' claim against Novak is within the scope of broad arbitration provisions contained in client engagement agreements, which require

arbitration in the District of Columbia of "any dispute concerning [Novak's] representation, including disputes regarding the amount of fees or the quality of [Novak's] services." (Exs. A and B, ¶ 9.)

## PARTIES

5. Novak is a limited liability partnership formed under Texas law. Its headquarters is in Texas. It has a substantial office and practice in Washington, DC.

6. Respondent Paul Baxendale-Walker is a citizen and resident of the United Kingdom.

7. Respondent Shahrokh Mireskandari is a citizen of the United Kingdom and resident of California.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action because the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs arbitration of disputes where interstate commerce is implicated.

9. This Court is authorized by 9 U.S.C. §§ 1-16 to compel arbitration.

10. Venue for the limited purpose of compelling arbitration is proper in this District under 28 U.S.C. §1391(b)(3) and under 28 U.S.C. 1391(c)(3) because Respondent Baxendale-Walker is not a resident of the United States.

11. This Court has personal jurisdiction over Respondents pursuant to their Engagement Agreements, which provide that arbitration shall be held in Washington, D.C. and governed by D.C. law.

12. The amount in controversy exceeds $75,000. Respondents requested compensatory damages in the California Action. Pursuant to their executed Engagement Letters, Respondents each agreed to "maintain a one hundred thousand dollars ($100,000) balance on deposit in a trust account." (Exs. A and B, p. 1.) Respondents complied with this requirement. Therefore, if compensatory damages were proven, Novak could be required to refund each Respondent at least $100,000.

## FACTUAL BACKGROUND

13. Respondents are former solicitors who have been barred from practicing law in England ("struck from the rolls").[1] In addition, Respondent Mireskandari was adjudicated bankrupt in England based on claims for unpaid fees by his former solicitors. (*See* Mireskandari Order, p. 210.) The English Court issued an "anti-suit" injunction against Respondent Baxendale-Walker to prevent him from filing additional litigation in England related to his disbarment. (*See* Baxendale-Walker Order.) Respondents then came to the United States court system and filed actions against various of the U.K. entities involved in their

---

[1] *See* Solicitors Disciplinary Tribunal, *In re Paul Michael Baxendale-Walker et al.,* Case No. 9124-2004, ¶ 14.15 Sept. 11-25, 29, 2006, available at http://www.solicitorstribunal.org.uk/Content/documents/9124-2004%20-%20Baxendale-Walker%20and%20Auden.pdf [hereinafter Baxendale-Walker Order]; Solicitors Disciplinary Tribunal, Case No. 10411-2009, Apr. 1-21, 2011, May 28-June 1, 2012, and June 11-21, 2012, ¶¶ 1038-68, available at http://www.solicitorstribunal.org.uk/Content/documents/10411.2009.Mireskandari.pdf [hereinafter Mireskandari Order].

disbarment.  (Ex. C, ¶¶ 9-12.)  Thereafter, Respondents filed lawsuits against, or are in arbitration against, a significant number of the law firms that represented them in the U.S. actions, including Blecher & Collins, Seyfarth Shaw LLP, Edwards, Wildman and Palmer, Marks & Sokolov, LLC, and Novak.  (Ex. C, pp. 4-6.)

14. Respondents engaged Novak to represent them in two of the United States District Court cases they have filed in the Central District of California, entitled *Mireskandari v. Barrington Mayne, et al.*, Case No. 2:12-cv-03861-JGB-MAN) ("*Barrington Mayne*") and *Mireskandari v. Daily Mail and General Trust PLC, et al.*, Case No. 2:12-cv-02943-MMM) ("*Daily Mail*").  In *Barrington Mayne*, Respondents alleged that the Law Society of England and Wales and the Solicitors Regulation Authority committed violations of the Racketeering/RICO Act and the Computer Fraud and Abuse Act under 18 U.S.C. § 1030, among other things.  In *Daily Mail*, Respondent Mireskandari asserted numerous causes of action against the Daily Mail, including violations of the Computer Fraud and Abuse Act and intentional infliction of emotional distress.

15. Novak and each Respondent executed Engagement Agreements, which required that "any disputes concerning [Novak's] representation . . . be determined by binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association . . . in Washington, D.C." (Exs. A and B, ¶ 9.)  Further, the parties agreed that "the terms and conditions of the attached letter and th[e] Memorandum shall be governed by and interpreted in accordance with the law of The District of Columbia without regard to its conflict of laws principles."  (Exs. A and B, ¶ 10.)

16. After Novak terminated its representation of Respondents in the *Barrington Mayne* and *Daily Mail* actions, Respondents sued Novak and two other

-5-

law firms[2] in the California Action on December 23, 2013. The suit asserts claims of legal malpractice against Novak.

17. The Engagement Agreements require that all arbitration proceedings shall be held in Washington, D.C. and shall be under the laws of the District of Columbia. *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."); *Ansari v. Quest Communications Corp.,* 414 F.3d 1214, 1219-20 (10th Cir. 2005) (the "majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4."). Novak, in the California Action, filed a motion to compel arbitration in D.C., which it will withdraw in light of this Petition.

## LEGAL ARGUMENT

18. Under both federal law and the laws of the District of Columbia, Respondents must arbitrate their claims against Novak in Washington, D.C. Respondents' claim falls within the broad terms of the mandatory arbitration provisions that Respondents agreed to be bound by when they engaged Novak to represent them in the *Barrington Mayne* and *Daily Mail* actions.

19. The FAA and the D.C. Code embrace a strong policy favoring enforcement of contractual arbitration clauses. Federal law provides that an arbitration clause in a contract is "valid, irrevocable, and enforceable, save upon

---

[2] Novak's co-defendant in the California Action, Marks & Sokolov, is a Philadelphia law firm that filed an action against Respondents in the United States District Court in the Eastern District of Philadelphia seeking to collect $210,930.43 in unpaid attorneys' fees. Marks & Sokolov has already obtained a default judgment against Respondents in the Eastern District of Pennsylvania.

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 25 (the FAA reflects a "liberal federal policy favoring arbitration agreements."); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* 460 U.S. 1, 24-25 (1983) ("[The FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

20. Also, under the District of Columbia's Revised Uniform Arbitration Act ("RUAA") a party may seek an order compelling arbitration pursuant to an arbitration agreement by filing a motion with the court. D.C. Code § 16-4405(b). Pursuant to section 16-4407 of the RUAA, "[o]n a motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement: (1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and (2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate." The RUAA applies to consumer arbitration agreements, such as the Engagement Agreements, that are governed by the FAA. *See* D.C. Code § 16-4403(d) ("A provision for mandatory binding arbitration within a consumer arbitration is void and unenforceable except to the extent federal law provides for its enforceability.")

21. Federal law provides that an arbitration clause in a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

-7-

equity for the revocation of any contract." 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 25 (the FAA reflects a "liberal federal policy favoring arbitration agreements."); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* 460 U.S. 1, 24-25 (1983) ("[The FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

22. In addition, the FAA and the D.C. Code both reflect a strong policy favoring enforcement of contractual forum selection clauses. *Parker v. K&L Gates, LLP,* 76 A.3d 859 (D.C. 2013) (finding arbitration and forum selection clause in partnership agreement between attorney and law firm valid and enforceable).

23. A court considering an action to compel arbitration "analyzes the arbitration agreement under the FAA and applicable state law to determine whether (1) the parties entered into a valid and enforceable arbitration agreement and (2) whether the arbitration agreement encompasses the claims raised in the complaint." *United States v. Federal Ins. Co.,* 672 F.Supp.2d 92, 97 (D.D.C. 2009); *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005).

24. Here, there is no disagreement that the parties have agreed to arbitrate their disputes. All of the claims asserted by Respondents in the California Action fall within the scope of the arbitration provisions: "any disputes concerning [Novak's] representation . . . be determined by binding arbitration under the

Commercial Arbitration Rules of the American Arbitration Association . . . in Washington, D.C." (Exs. A and B, ¶ 9.)

25. Respondents, both of whom are trained in the law and experienced in executing engagement agreements with law firms (as suggested by their litigious history), agreed to all of this. Therefore, the Court should compel Respondents to arbitrate their disputes.

26. In addition, this Court should issue an order to stay the California Action, pursuant to the FAA and the D.C. Code. The FAA, provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .

9 U.S.C. § 3 (emphasis added).

27. Under the D.C. Code, "[i]f a party makes a motion to the court to order arbitration, the court, on just terms, **shall** stay any judicial proceeding that involves a claim alleged to be the subject of the arbitration until the court renders a final decision under this section." D.C. Code § 16-4407(e) (emphasis added). Accordingly, the California Action should be stayed pending a resolution of this Petition.

**WHEREFORE,** Petitioner Novak respectfully requests:

-9-

1.       That this Court issue an order compelling Respondents to submit their claims to binding arbitration in accordance with the arbitration provisions in the parties' Engagement Agreements.

2.       That this Court issue an order to stay proceedings in the Superior Court of the State of California, County of Los Angeles, Case No. BC531449, pending a determination on this Petition and, if arbitration is ordered, until an arbitration is had in accordance with the order to arbitrate.

Dated:  May 12, 2014

Respectfully submitted,

By    /s/ David F. Geneson
       DAVID F. GENESON, WDC Bar No. 267245
       8025 East Boulevard Drive
       Alexandria, Virginia  22308
       Tel: 202-812-2725
       Fax: 202-812-2725
       Email: dgeneson@yahoo.com
       Attorney for Petitioner
       Novak Druce Connolly Bove & Quigg LLP